## STANDARD CONTRACT FOR SERVICES

1. **Parties.** This is a Contract for services between State of Vermont, Department of Disabilities, Aging, and Independent Living, Division of Vocational Rehabilitation (hereinafter called "State") and Mirna Valerio, d/b/a The Mirnavator, LLC, with a principal place of business in Montpelier, Vermont, (hereinafter called "Contractor"). Contractor's form of business organization is an LLC. It is the Contractor's responsibility to contact the Vermont Department of Taxes to determine if, by law, the Contractor is required to have a Vermont Department of Taxes Business Account Number.

2. **Subject Matter.** The subject matter of this Contract is services generally on the subject of providing training services to Vocational Rehabilitation Staff. Detailed services to be provided by the Contractor are described in Attachment A.

3. **Maximum Amount.** In consideration of the services to be performed by Contractor, the State agrees to pay Contractor, in accordance with the payment provisions specified in Attachment B, a sum not to exceed $45,000.00.

4. **Contract Term.** The period of Contractor's performance shall begin on March 29, 2021 and end on December 31, 2021.

5. **Source of Funds.** The State Program Code for this "Fee for Service" Contract is:

    43020 and 43290 (Vocational Rehabilitation to be Allocated) - $45,000.00

6. **Prior Approvals.** This Contract shall not be binding unless and until all requisite prior approvals have been obtained in accordance with current State law, bulletins, and interpretations.

7. **Contact Persons for this Contract.**

    | State Primary Contact Person: | Contractor Primary Contact Person: |
    |---|---|
    | Heather Batalion, Training Coordinator | Mirna Valerio |
    | email: heather.batalion@vermont.gov | email: themirnavator@gmail.com |
    | Telephone: 802-760-0585 | Telephone: 802-522-8689 |

8. **Amendment.** No changes, modifications, or amendments in the terms and conditions of this Contract shall be effective unless reduced to writing, numbered and signed by the duly authorized representative of the State and Contractor.

9. **Termination for Convenience.** This contract may be terminated by the State at any time by giving written notice at least thirty (30) days in advance. In such event, Contractor shall be paid under the terms of this contract for all services provided to and accepted by the State prior to the effective date of termination.

10. **Attachments.** This Contract consists of 18 pages including the following attachments, which are incorporated herein:

    Attachment A - Statement of Work
    Attachment B - Payment Provisions
    Attachment C - Standard State Provisions for Contracts and Grants
    Attachment D - Modification of Customary Provisions (not used)
    Attachment E - Business Associate Agreement (not used)
    Attachment F - AHS Customary Contract Provisions

11. **Order of Precedence.** Any ambiguity, conflict or inconsistency between the documents comprising

this contract shall be resolved according to the following order of precedence:

    (1) Standard Contract

    (2) Attachment D (not used)

    (3) Attachment C

    (4) Attachment A

    (5) Attachment B

    (6) Attachment E (not used)

    (7) Attachment F

**WE THE UNDERSIGNED PARTIES AGREE TO BE BOUND BY THIS CONTRACT.**

By the State of Vermont:

Signature: _E-SIGNED by Monica White on 2021-05-19 18:15:30 GMT_

Name: Monica White

Commissioner, Department of Disabilities, Aging and Independent Living

By the Division of Vocational Rehabilitation:

Signature: _E-SIGNED by Diane Dalmasse on 2021-05-02 13:25:42 GMT_

Name: Diane Dalmasse, Director

Division of Vocational Rehabilitation

By the Contractor:

Signature: _E-SIGNED by Mirna Valerio on 2021-05-02 02:15:28 GMT_

Name: Mirna Valerio, Member

The Mirnavator, LLC

Contractor's Address:

Mirna Valerio
The Mirnavator, LLC
114 Main Street, Unit 202
Montpelier, VT   05602

# ATTACHMENT A - STATEMENT OF WORK

## Overview

This is a 'Fee for Services Contract' to deliver equity, inclusion and anti-racism training content to the staff of the Division of Vocational Rehabilitation (DVR). These trainings will help improve and expand the skills of DVR Staff through the following provision of services by the Contractor.

## Services to be Performed by Contractor

### Section I - Development of Training

1. Contractor will develop a 3 half-day (4 hours each) virtual training workshops that feature live presentation and pre-recorded material (13.5 total training hours including breaks).

2. Contractor's training material will place emphasis on the diversity, equity, inclusion and anti-racism as key themes in this program and will include, but not be limited to the following supporting components:

   - Introduction to Identity, Social Justice, and Antiracism
   - Showing respect for every consumer regardless of race, language, religion, ethnicity, gender, age, and sexual orientation;
   - Recognizing bias and positive and productive self-awareness in serving a diverse population;
   - Understanding the decision points in the DVR business process that might be influenced by implicit bias; and
   - Developing a commitment to fairness, equity and diversity in the provision of services to DVR consumers

3. Contractor will provide an overview of this training content to DVR's Management Team.

4. Contractor will develop a secondary 2-hour virtual training workshop on Class, Class Consciousness, and Classism.

### Section II - Training Delivery

1. Contractor will deliver Introduction to Identity, Social Justice and Anti-Racism Training to all DVR Staff, starting off virtually. Any follow up or subsequent trainings will be in-person or virtual depending on State guidelines.

2. Contractor will deliver secondary training on Class, Class Consciousness, and Classism starting off virtually. Any follow up or subsequent trainings will be in-person or virtual depending on State guidelines.

### Section III - Consultation

Contractor will be available at an hourly rate to provide further consultation as needed.

1. Contractor will provide consultation for DVR Management and/or Staff as needed on areas of their expertise on Diversity, Equity, Inclusion and Anti-Racism.

2. Contractor will be available for follow up discussions within the 6 DVR regions and Central Office for virtual consultation as a subject matter expert.

Section IV - Contract Deliverables

### *Deliverable One:*

1. Within 90 days of the contract start date, Contractor will develop and deliver to DVR a Design Plan for the deliverables in Section I.

### *Deliverable Two: Training*

1. Within 4 months of the contract start date, Contractor will deliver a minimum of 2 virtual training workshops to DVR Staff on the subject of Equity, Inclusion and Anti-Racism.

    - Trainings will include expected learning outcomes.
    - Content to be delivered in-person or virtually.
    - Training will include expected learning activities.
    - The workshop will include further resources for the participants.

    The content must be approved by the DVR Contract Manager prior to delivery.

2. At the request of the DVR Contract Manager, Contractor will provide additional training workshops on the subject of Equity, Inclusion and Anti-Racism.

3. Contractor will provide follow up training workshops on Class, Class Consciousness, and Classism in half-day workshops (4 hours each).

### *Deliverable Three: Consultation*

1. Contractor will provide consultation at the request of the DVR Contract Manager in hourly increments. All hours must be pre-approved by the DVR Contract Manager.

## ATTACHMENT B - PAYMENT PROVISIONS

The maximum dollar amount payable under this contract is not intended as any form of a guaranteed amount. Contractor will be paid for products or services actually delivered or performed, as specified in Attachment A, up to the maximum allowable amount specified on page 1 of this contract.

1. Prior to commencement of work and release of any payments, Contractor shall submit to State:
   a. a certificate of insurance consistent with the requirements set forth in Attachment C, Section 8 (Insurance), and with any additional requirements for insurance as may be set forth elsewhere in this contract; and
   b. a current IRS Form W-9 (signed within the last six months).
2. Payment terms are **Net 30** days from the date State receives an error-free invoice with all necessary and complete supporting documentation.
3. Contractor shall submit detailed invoices itemizing all work performed during the invoice period, including the dates of service, rates of pay, hours of work performed, and any other information and/or documentation appropriate and sufficient to substantiate the amount invoiced for payment by State. All invoices must include the contract number for this Contract. Fees below are inclusive of all Contractor expenses including travel, lodging, meals and any incidental costs.
4. Contractor shall submit invoices to State in accordance with the schedule set forth in this Attachment B. Unless a more particular schedule is provided herein, invoices shall be submitted not more frequently than monthly.
5. Invoices shall be submitted to the State at the following address:

   > Heather Batalion,
   > Staff Development & Training Coordinator
   > Division of Vocational Rehabilitation
   > HC 2 South, 280 State Drive
   > Waterbury, VT   05671-2040

6. The payment schedule for delivered products, or rates for services performed, and any additional reimbursements, are as follows:
   a. Upon receipt of Contractor's invoices on its letterhead detailing the services provided, the dates thereof, and upon confirmation by State that all services have been completed to its satisfaction, State will make payments to Contractor according to the following schedule as specified in Attachment A, Section IV. Fees below are inclusive of all Contractor expenses including travel, lodging, meals and any incidental costs.
   b. Payment Schedule:

   | Deliverable | Units | Format | Contractor Fee | Total |
   |---|---|---|---|---|
   | 2.1: Diversity, Equity, Inclusion and Anti-Racism Trainings | 3 | In-Person or Virtual | $7,500.00 Per Half-Day Workshop | $22,500.00 |
   | 2.3: Class, Class Consciousness and Classism Trainings | 2 | In-Person or Virtual | $5,000.00 Per Half-Day Workshop | $10,000.00 |
   | 3.1: On-Demand Consultation | 50 | In-Person or Virtual | $250.00 Per Hour | $12,500.00 |
   | **Total Fees** | | | | **$45,000.00** |

   c. Criteria for Payment:
      - Billing for deliverables can occur following the completion of each unit.

    d. Optional Re-Allocation:
- In the event that the On-Demand Consultation hours have not been fully expended during the Contract period, State may at its discretion, re-allocate available funds in $7,500.00 or $5,000.00 increments to Deliverable 2.1 or Deliverable 2.3 respectively, for the provision of additional half-day training workshops.

7. The total value of this Contract will not exceed $45,000.00 within the stated Contract term.

8. Payments may be withheld in whole, or in part, in the event of failure by the Contractor to comply with the terms of this Contract.

9. State reserves the right to adjust any payment based upon Contractor's actual performance.

10. In the event of Contract suspension or termination, Contractor shall be entitled to receive payment, if not previously paid, for work performed or products delivered and accepted hereunder through the date of termination. This provision does not apply to terminations for cause.

11. Contractor shall submit final claims for payment within 30 days of expiration, cancellation or termination of this Contract. Claims received after 30 days may not be honored by State.

# ATTACHMENT C: STANDARD STATE PROVISIONS
# FOR CONTRACTS AND GRANTS
### REVISED DECEMBER 15, 2017

**1. Definitions:** For purposes of this Attachment, "Party" shall mean the Contractor, Grantee or Subrecipient, with whom the State of Vermont is executing this Agreement and consistent with the form of the Agreement. "Agreement" shall mean the specific contract or grant to which this form is attached.

**2. Entire Agreement:** This Agreement, whether in the form of a contract, State-funded grant, or Federally-funded grant, represents the entire agreement between the parties on the subject matter. All prior agreements, representations, statements, negotiations, and understandings shall have no effect.

**3. Governing Law, Jurisdiction and Venue; No Waiver of Jury Trial:** This Agreement will be governed by the laws of the State of Vermont. Any action or proceeding brought by either the State or the Party in connection with this Agreement shall be brought and enforced in the Superior Court of the State of Vermont, Civil Division, Washington Unit. The Party irrevocably submits to the jurisdiction of this court for any action or proceeding regarding this Agreement. The Party agrees that it must first exhaust any applicable administrative remedies with respect to any cause of action that it may have against the State with regard to its performance under this Agreement. Party agrees that the State shall not be required to submit to binding arbitration or waive its right to a jury trial.

**4. Sovereign Immunity:** The State reserves all immunities, defenses, rights or actions arising out of the State's sovereign status or under the Eleventh Amendment to the United States Constitution. No waiver of the State's immunities, defenses, rights or actions shall be implied or otherwise deemed to exist by reason of the State's entry into this Agreement.

**5. No Employee Benefits For Party:** The Party understands that the State will not provide any individual retirement benefits, group life insurance, group health and dental insurance, vacation or sick leave, workers compensation or other benefits or services available to State employees, nor will the State withhold any state or Federal taxes except as required under applicable tax laws, which shall be determined in advance of execution of the Agreement. The Party understands that all tax returns required by the Internal Revenue Code and the State of Vermont, including but not limited to income, withholding, sales and use, and rooms and meals, must be filed by the Party, and information as to Agreement income will be provided by the State of Vermont to the Internal Revenue Service and the Vermont Department of Taxes.

**6. Independence:** The Party will act in an independent capacity and not as officers or employees of the State.

**7. Defense and Indemnity:** The Party shall defend the State and its officers and employees against all third party claims or suits arising in whole or in part from any act or omission of the Party or of any agent of the Party in connection with the performance of this Agreement. The State shall notify the Party in the event of any such claim or suit, and the Party shall immediately retain counsel and otherwise provide a complete defense against the entire claim or suit. The State retains the right to participate at its own expense in the defense of any claim. The State shall have the right to approve all proposed settlements of such claims or suits.

After a final judgment or settlement, the Party may request recoupment of specific defense costs and may file suit in Washington Superior Court requesting recoupment. The Party shall be entitled to recoup costs only upon a showing that such costs were entirely unrelated to the defense of any claim arising from an act or omission of the Party in connection with the performance of this Agreement.

The Party shall indemnify the State and its officers and employees if the State, its officers or employees become legally obligated to pay any damages or losses arising from any act or omission of the Party or an agent of the Party in connection with the performance of this Agreement.

Notwithstanding any contrary language anywhere, in no event shall the terms of this Agreement or any document furnished by the Party in connection with its performance under this Agreement obligate the State to (1) defend or indemnify the Party or any third party, or (2) otherwise be liable for the expenses or reimbursement, including attorneys' fees, collection costs or other costs of the Party or any third party.

**8. Insurance:** Before commencing work on this Agreement the Party must provide certificates of insurance to show that the following minimum coverages are in effect. It is the responsibility of the Party to maintain current certificates of insurance on file with the State through the term of this Agreement. No warranty is made that the coverages and limits listed herein are adequate to cover and protect the interests of the Party for the Party's operations. These are solely minimums that have been established to protect the interests of the State.

*Workers Compensation*: With respect to all operations performed, the Party shall carry workers' compensation insurance in accordance with the laws of the State of Vermont. Vermont will accept an out-of-state employer's workers' compensation coverage while operating in Vermont provided that the insurance carrier is licensed to write insurance in Vermont and an amendatory endorsement is added to the policy adding Vermont for coverage purposes. Otherwise, the party shall secure a Vermont workers' compensation policy, if necessary to comply with Vermont law.

*General Liability and Property Damage*: With respect to all operations performed under this Agreement, the Party shall carry general liability insurance having all major divisions of coverage including, but not limited to:

> Premises - Operations
> Products and Completed Operations
> Personal Injury Liability
> Contractual Liability
> The policy shall be on an occurrence form and limits shall not be less than:
>> $1,000,000 Each Occurrence
>> $2,000,000 General Aggregate
>> $1,000,000 Products/Completed Operations Aggregate
>> $1,000,000 Personal & Advertising Injury

*Automotive Liability:* The Party shall carry automotive liability insurance covering all motor vehicles, including hired and non-owned coverage, used in connection with the Agreement. Limits of coverage shall not be less than $500,000 combined single limit. If performance of this Agreement involves construction, or the transport of persons or hazardous materials, limits of coverage shall not be less than $1,000,000 combined single limit.

*Additional Insured.* The General Liability and Property Damage coverages required for performance of this Agreement shall include the State of Vermont and its agencies, departments, officers and employees as Additional Insureds. If performance of this Agreement involves construction, or the transport of persons or hazardous materials, then the required Automotive Liability coverage shall include the State of Vermont and its agencies, departments, officers and employees as Additional Insureds. Coverage shall be primary and non-contributory with any other insurance and self-insurance.

*Notice of Cancellation or Change.* There shall be no cancellation, change, potential exhaustion of aggregate limits or non-renewal of insurance coverage(s) without thirty (30) days written prior written notice to the State.

**9. Reliance by the State on Representations:** All payments by the State under this Agreement will be made in reliance upon the accuracy of all representations made by the Party in accordance with this Agreement, including but not limited to bills, invoices, progress reports and other proofs of work.

**10. False Claims Act:** The Party acknowledges that it is subject to the Vermont False Claims Act as set forth in 32 V.S.A. § 630 *et seq.* If the Party violates the Vermont False Claims Act it shall be liable to the State for civil penalties, treble damages and the costs of the investigation and prosecution of such violation, including attorney's fees, except as the same may be reduced by a court of competent jurisdiction. The Party's liability to the State under the False Claims Act shall not be limited notwithstanding any agreement of the State to otherwise limit Party's liability.

**11. Whistleblower Protections:** The Party shall not discriminate or retaliate against one of its employees or agents for disclosing information concerning a violation of law, fraud, waste, abuse of authority or acts threatening health or safety, including but not limited to allegations concerning the False Claims Act. Further, the Party shall not require such employees or agents to forego monetary awards as a result of such disclosures, nor should they be required to report misconduct to the Party or its agents prior to reporting to any governmental entity and/or the public.

**12. Location of State Data:** No State data received, obtained, or generated by the Party in connection with performance under this Agreement shall be processed, transmitted, stored, or transferred by any means outside the continental United States, except with the express written permission of the State.

**13. Records Available for Audit:** The Party shall maintain all records pertaining to performance under this agreement. "Records" means any written or recorded information, regardless of physical form or characteristics, which is produced or acquired by the Party in the performance of this agreement. Records produced or acquired in a machine readable electronic format shall be maintained in that format. The records described shall be made available at reasonable times during the period of the Agreement and for three years thereafter or for any period required by law for inspection by any authorized representatives of the State or Federal Government. If any litigation, claim, or audit is started before the expiration of the three-year period, the records shall be retained until all litigation, claims or audit findings involving the records have been resolved.

**14. Fair Employment Practices and Americans with Disabilities Act:** Party agrees to comply with the requirement of 21 V.S.A. Chapter 5, Subchapter 6, relating to fair employment practices, to the full extent applicable. Party shall also ensure, to the full extent required by the Americans with Disabilities Act of 1990, as amended, that qualified individuals with disabilities receive equitable access to the services, programs, and activities provided by the Party under this Agreement.

**15. Set Off:** The State may set off any sums which the Party owes the State against any sums due the Party under this Agreement; provided, however, that any set off of amounts due the State of Vermont as taxes shall be in accordance with the procedures more specifically provided hereinafter.

**16. Taxes Due to the State:**
   A. Party understands and acknowledges responsibility, if applicable, for compliance with State tax laws, including income tax withholding for employees performing services within the State, payment of use tax on property used within the State, corporate and/or personal income tax on income earned within the State.
   B. Party certifies under the pains and penalties of perjury that, as of the date this Agreement is signed, the Party is in good standing with respect to, or in full compliance with, a plan to pay any and all taxes due the State of Vermont.
   C. Party understands that final payment under this Agreement may be withheld if the Commissioner of Taxes determines that the Party is not in good standing with respect to or in full compliance with a plan to pay any and all taxes due to the State of Vermont.
   D. Party also understands the State may set off taxes (and related penalties, interest and fees) due to the State of Vermont, but only if the Party has failed to make an appeal within the time allowed by law, or an appeal has been taken and finally determined and the Party has no further legal recourse to contest the amounts due.

**17. Taxation of Purchases:** All State purchases must be invoiced tax free. An exemption certificate will be furnished upon request with respect to otherwise taxable items.

**18. Child Support:** (Only applicable if the Party is a natural person, not a corporation or partnership.) Party states that, as of the date this Agreement is signed, he/she:
   A. Is not under any obligation to pay child support; or
   B. Is under such an obligation and is in good standing with respect to that obligation; or
   C. Has agreed to a payment plan with the Vermont Office of Child Support Services and is in full compliance with that plan.

Party makes this statement with regard to support owed to any and all children residing in Vermont. In addition, if the Party is a resident of Vermont, Party makes this statement with regard to support owed to any and all children residing in any other state or territory of the United States.

**19. Sub-Agreements:** Party shall not assign, subcontract or subgrant the performance of this Agreement or any portion thereof to any other Party without the prior written approval of the State. Party shall be responsible and liable to the State for all acts or omissions of subcontractors and any other person performing work under this Agreement pursuant to an agreement with Party or any subcontractor.

In the case this Agreement is a contract with a total cost in excess of $250,000, the Party shall provide to the State a list of all proposed subcontractors and subcontractors' subcontractors, together with the identity of those subcontractors' workers compensation insurance providers, and additional required or requested information, as applicable, in accordance with Section 32 of The Vermont Recovery and Reinvestment Act of 2009 (Act No. 54).

Party shall include the following provisions of this Attachment C in all subcontracts for work performed solely for the State of Vermont and subcontracts for work performed in the State of Vermont: Section 10 ("False Claims Act"); Section 11 ("Whistleblower Protections"); Section 12 ("Location of State Data"); Section 14 ("Fair Employment Practices and Americans with Disabilities Act"); Section 16 ("Taxes Due the State"); Section 18 ("Child Support"); Section 20 ("No Gifts or Gratuities"); Section 22 ("Certification Regarding Debarment"); Section 30 ("State Facilities"); and Section 32.A ("Certification Regarding Use of State Funds").

**20. No Gifts or Gratuities:** Party shall not give title or possession of anything of substantial value (including property, currency, travel and/or education programs) to any officer or employee of the State during the term of this Agreement.

**21. Copies:** Party shall use reasonable best efforts to ensure that all written reports prepared under this Agreement are printed using both sides of the paper.

**22. Certification Regarding Debarment:** Party certifies under pains and penalties of perjury that, as of the date that this Agreement is signed, neither Party nor Party's principals (officers, directors, owners, or partners) are presently debarred, suspended, proposed for debarment, declared ineligible or excluded from participation in Federal programs, or programs supported in whole or in part by Federal funds.

Party further certifies under pains and penalties of perjury that, as of the date that this Agreement is signed, Party is not presently debarred, suspended, nor named on the State's debarment list at: http://bgs.vermont.gov/purchasing/debarment

**23. Conflict of Interest:** Party shall fully disclose, in writing, any conflicts of interest or potential conflicts of interest.

**24. Confidentiality:** Party acknowledges and agrees that this Agreement and any and all information obtained by the State from the Party in connection with this Agreement are subject to the State of Vermont Access to Public Records Act, 1 V.S.A. § 315 et seq.

**25. Force Majeure:** Neither the State nor the Party shall be liable to the other for any failure or delay of performance of any obligations under this Agreement to the extent such failure or delay shall have been wholly or principally caused by acts or events beyond its reasonable control rendering performance illegal or impossible (excluding strikes or lock-outs) ("Force Majeure"). Where Force Majeure is asserted, the nonperforming party must prove that it made all reasonable efforts to remove, eliminate or minimize such cause of delay or damages, diligently pursued performance of its obligations under this Agreement, substantially fulfilled all non-excused obligations, and timely notified the other party of the likelihood or actual occurrence of an event described in this paragraph.

**26. Marketing:** Party shall not refer to the State in any publicity materials, information pamphlets, press releases, research reports, advertising, sales promotions, trade shows, or marketing materials or similar communications to third parties except with the prior written consent of the State.

**27. Termination:**
   A. **Non-Appropriation:** If this Agreement extends into more than one fiscal year of the State (July 1 to June 30), and if appropriations are insufficient to support this Agreement, the State may cancel at the end of the fiscal year, or otherwise upon the expiration of existing appropriation authority. In the case that this Agreement is a Grant that is funded in whole or in part by Federal funds, and in the event Federal funds

become unavailable or reduced, the State may suspend or cancel this Grant immediately, and the State shall have no obligation to pay Subrecipient from State revenues.

B. **Termination for Cause:** Either party may terminate this Agreement if a party materially breaches its obligations under this Agreement, and such breach is not cured within thirty (30) days after delivery of the non-breaching party's notice or such longer time as the non-breaching party may specify in the notice.

C. **Termination Assistance:** Upon nearing the end of the final term or termination of this Agreement, without respect to cause, the Party shall take all reasonable and prudent measures to facilitate any transition required by the State. All State property, tangible and intangible, shall be returned to the State upon demand at no additional cost to the State in a format acceptable to the State.

**28. Continuity of Performance:** In the event of a dispute between the Party and the State, each party will continue to perform its obligations under this Agreement during the resolution of the dispute until this Agreement is terminated in accordance with its terms.

**29. No Implied Waiver of Remedies:** Either party's delay or failure to exercise any right, power or remedy under this Agreement shall not impair any such right, power or remedy, or be construed as a waiver of any such right, power or remedy. All waivers must be in writing.

**30. State Facilities:** If the State makes space available to the Party in any State facility during the term of this Agreement for purposes of the Party's performance under this Agreement, the Party shall only use the space in accordance with all policies and procedures governing access to and use of State facilities which shall be made available upon request. State facilities will be made available to Party on an "AS IS, WHERE IS" basis, with no warranties whatsoever.

**31. Requirements Pertaining Only to Federal Grants and Subrecipient Agreements:** If this Agreement is a grant that is funded in whole or in part by Federal funds:

A. **Requirement to Have a Single Audit:** The Subrecipient will complete the Subrecipient Annual Report annually within 45 days after its fiscal year end, informing the State of Vermont whether or not a Single Audit is required for the prior fiscal year. If a Single Audit is required, the Subrecipient will submit a copy of the audit report to the granting Party within 9 months. If a single audit is not required, only the Subrecipient Annual Report is required.

For fiscal years ending before December 25, 2015, a Single Audit is required if the subrecipient expends $500,000 or more in Federal assistance during its fiscal year and must be conducted in accordance with OMB Circular A-133. For fiscal years ending on or after December 25, 2015, a Single Audit is required if the subrecipient expends $750,000 or more in Federal assistance during its fiscal year and must be conducted in accordance with 2 CFR Chapter I, Chapter II, Part 200, Subpart F. The Subrecipient Annual Report is required to be submitted within 45 days, whether or not a Single Audit is required.

B. **Internal Controls:** In accordance with 2 CFR Part II, §200.303, the Party must establish and maintain effective internal control over the Federal award to provide reasonable assurance that the Party is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the award. These internal controls should be in compliance with guidance in "Standards for Internal Control in the Federal Government" issued by the Comptroller General of the United States and the "Internal Control Integrated Framework", issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).

C. **Mandatory Disclosures:** In accordance with 2 CFR Part II, §200.113, Party must disclose, in a timely manner, in writing to the State, all violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Failure to make required disclosures may result in the imposition of sanctions which may include disallowance of costs incurred, withholding of payments, termination of the Agreement, suspension/debarment, etc.

**32. Requirements Pertaining Only to State-Funded Grants:**

A. **Certification Regarding Use of State Funds:** If Party is an employer and this Agreement is a State-funded grant in excess of $1,001, Party certifies that none of these State funds will be used to interfere with or restrain the exercise of Party's employee's rights with respect to unionization.

B. **Good Standing Certification (Act 154 of 2016):** If this Agreement is a State-funded grant, Party hereby represents: (i) that it has signed and provided to the State the form prescribed by the Secretary of Administration for purposes of certifying that it is in good standing (as provided in Section 13(a)(2) of Act 154) with the Agency of Natural Resources and the Agency of Agriculture, Food and Markets, or otherwise explaining the circumstances surrounding the inability to so certify, and (ii) that it will comply with the requirements stated therein.

(End of Standard Provisions)

## ATTACHMENT F
## AGENCY OF HUMAN SERVICES' CUSTOMARY CONTRACT/GRANT PROVISIONS

1. **Definitions**: For purposes of this Attachment F, the term "Agreement" shall mean the form of the contract or grant, with all of its parts, into which this Attachment F is incorporated. The meaning of the term "Party" when used in this Attachment F shall mean any named party to this Agreement *other than* the State of Vermont, the Agency of Human Services (AHS) and any of the departments, boards, offices and business units named in this Agreement. As such, the term "Party" shall mean, when used in this Attachment F, the Contractor or Grantee with whom the State of Vermont is executing this Agreement. If Party, when permitted to do so under this Agreement, seeks by way of any subcontract, sub-grant or other form of provider agreement to employ any other person or entity to perform any of the obligations of Party under this Agreement, Party shall be obligated to ensure that all terms of this Attachment F are followed. As such, the term "Party" as used herein shall also be construed as applicable to, and describing the obligations of, any subcontractor, sub-recipient or sub-grantee of this Agreement. Any such use or construction of the term "Party" shall not, however, give any subcontractor, sub-recipient or sub-grantee any substantive right in this Agreement without an express written agreement to that effect by the State of Vermont.

2. **Agency of Human Services**: The Agency of Human Services is responsible for overseeing all contracts and grants entered by any of its departments, boards, offices and business units, however denominated. The Agency of Human Services, through the business office of the Office of the Secretary, and through its Field Services Directors, will share with any named AHS-associated party to this Agreement oversight, monitoring and enforcement responsibilities. Party agrees to cooperate with both the named AHS-associated party to this contract and with the Agency of Human Services itself with respect to the resolution of any issues relating to the performance and interpretation of this Agreement, payment matters and legal compliance.

3. **Medicaid Program Parties** *(applicable to any Party providing services and supports paid for under Vermont's Medicaid program and Vermont's Global Commitment to Health Waiver)*:

    ***Inspection and Retention of Records***: In addition to any other requirement under this Agreement or at law, Party must fulfill all state and federal legal requirements, and will comply with all requests appropriate to enable the Agency of Human Services, the U.S. Department of Health and Human Services (along with its Inspector General and the Centers for Medicare and Medicaid Services), the Comptroller General, the Government Accounting Office, or any of their designees: (i) to evaluate through inspection or other means the quality, appropriateness, and timeliness of services performed under this Agreement; and (ii) to inspect and audit any records, financial data, contracts, computer or other electronic systems of Party relating to the performance of services under Vermont's Medicaid program and Vermont's Global Commitment to Health Waiver. Party will retain for ten years all documents required to be retained pursuant to 42 CFR 438.3(u).

    ***Subcontracting for Medicaid Services***: Notwithstanding any permitted subcontracting of services to be performed under this Agreement, Party shall remain responsible for ensuring that this Agreement is fully performed according to its terms, that subcontractor remains in compliance with the terms hereof, and that subcontractor complies with all state and federal laws and regulations relating to the Medicaid program in Vermont. Subcontracts, and any service provider agreements entered into by Party in connection with the performance of this Agreement, must clearly specify in writing the responsibilities of the subcontractor or other service provider and Party must retain the authority to revoke its subcontract or service provider agreement or to impose other sanctions if the performance of the subcontractor or service provider is inadequate or if its performance deviates from any

requirement of this Agreement. Party shall make available on request all contracts, subcontracts and service provider agreements between the Party, subcontractors and other service providers to the Agency of Human Services and any of its departments as well as to the Center for Medicare and Medicaid Services.

***Medicaid Notification of Termination Requirements***: Party shall follow the Department of Vermont Health Access Managed-Care-Organization enrollee-notification requirements, to include the requirement that Party provide timely notice of any termination of its practice.

***Encounter Data***: Party shall provide encounter data to the Agency of Human Services and/or its departments and ensure further that the data and services provided can be linked to and supported by enrollee eligibility files maintained by the State.

***Federal Medicaid System Security Requirements Compliance***: Party shall provide a security plan, risk assessment, and security controls review document within three months of the start date of this Agreement (and update it annually thereafter) in order to support audit compliance with 45 CFR 95.621 subpart F, *ADP System Security Requirements and Review Process*.

4. **Workplace Violence Prevention and Crisis Response** (*applicable to any Party and any subcontractors and sub-grantees whose employees or other service providers deliver social or mental health services directly to individual recipients of such services*):

   Party shall establish a written workplace violence prevention and crisis response policy meeting the requirements of Act 109 (2016), 33 VSA §8201(b), for the benefit of employees delivering direct social or mental health services. Party shall, in preparing its policy, consult with the guidelines promulgated by the U.S. Occupational Safety and Health Administration for *Preventing Workplace Violence for Healthcare and Social Services Workers*, as those guidelines may from time to time be amended.

   Party, through its violence protection and crisis response committee, shall evaluate the efficacy of its policy, and update the policy as appropriate, at least annually. The policy and any written evaluations thereof shall be provided to employees delivering direct social or mental health services.

   Party will ensure that any subcontractor and sub-grantee who hires employees (or contracts with service providers) who deliver social or mental health services directly to individual recipients of such services, complies with all requirements of this Section.

5. **Non-Discrimination**:

   Party shall not discriminate, and will prohibit its employees, agents, subcontractors, sub-grantees and other service providers from discrimination, on the basis of age under the Age Discrimination Act of 1975, on the basis of handicap under section 504 of the Rehabilitation Act of 1973, on the basis of sex under Title IX of the Education Amendments of 1972, and on the basis of race, color or national origin under Title VI of the Civil Rights Act of 1964. Party shall not refuse, withhold from or deny to any person the benefit of services, facilities, goods, privileges, advantages, or benefits of public accommodation on the basis of disability, race, creed, color, national origin, marital status, sex, sexual orientation or gender identity as provided by Title 9 V.S.A. Chapter 139.

   No person shall on the grounds of religion or on the grounds of sex (including, on the grounds that a woman is pregnant), be excluded from participation in, be denied the benefits of, or be subjected to

discrimination, to include sexual harassment, under any program or activity supported by State of Vermont and/or federal funds.

Party further shall comply with the non-discrimination requirements of Title VI of the Civil Rights Act of 1964, 42 USC Section 2000d, et seq., and with the federal guidelines promulgated pursuant to Executive Order 13166 of 2000, requiring that contractors and subcontractors receiving federal funds assure that persons with limited English proficiency can meaningfully access services. To the extent Party provides assistance to individuals with limited English proficiency through the use of oral or written translation or interpretive services, such individuals cannot be required to pay for such services.

6. **Employees and Independent Contractors**:

    Party agrees that it shall comply with the laws of the State of Vermont with respect to the appropriate classification of its workers and service providers as "employees" and "independent contractors" for all purposes, to include for purposes related to unemployment compensation insurance and workers compensation coverage, and proper payment and reporting of wages. Party agrees to ensure that all of its subcontractors or sub-grantees also remain in legal compliance as to the appropriate classification of "workers" and "independent contractors" relating to unemployment compensation insurance and workers compensation coverage, and proper payment and reporting of wages. Party will on request provide to the Agency of Human Services information pertaining to the classification of its employees to include the basis for the classification. Failure to comply with these obligations may result in termination of this Agreement.

7. **Data Protection and Privacy**:

    ***Protected Health Information***: Party shall maintain the privacy and security of all individually identifiable health information acquired by or provided to it as a part of the performance of this Agreement. Party shall follow federal and state law relating to privacy and security of individually identifiable health information as applicable, including the Health Insurance Portability and Accountability Act (HIPAA) and its federal regulations.

    ***Substance Abuse Treatment Information***: Substance abuse treatment information shall be maintained in compliance with 42 C.F.R. Part 2 if the Party or subcontractor(s) are Part 2 covered programs, or if substance abuse treatment information is received from a Part 2 covered program by the Party or subcontractor(s).

    ***Protection of Personal Information***: Party agrees to comply with all applicable state and federal statutes to assure protection and security of personal information, or of any personally identifiable information (PII), including the Security Breach Notice Act, 9 V.S.A. § 2435, the Social Security Number Protection Act, 9 V.S.A. § 2440, the Document Safe Destruction Act, 9 V.S.A. § 2445 and 45 CFR 155.260. As used here, PII shall include any information, in any medium, including electronic, which can be used to distinguish or trace an individual's identity, such as his/her name, social security number, biometric records, etc., either alone or when combined with any other personal or identifiable information that is linked or linkable to a specific person, such as date and place or birth, mother's maiden name, etc.

    ***Other Confidential Consumer Information***: Party agrees to comply with the requirements of AHS Rule No. 08-048 concerning access to and uses of personal information relating to any beneficiary or recipient of goods, services or other forms of support. Party further agrees to comply with any applicable Vermont State Statute and other regulations respecting the right to individual privacy. Party shall ensure that all of its employees, subcontractors and other service providers performing services under this agreement understand and preserve the sensitive, confidential and non-public nature of

information to which they may have access.

***Data Breaches***: Party shall report to AHS, though its Chief Information Officer (CIO), any impermissible use or disclosure that compromises the security, confidentiality or privacy of any form of protected personal information identified above within 24 hours of the discovery of the breach. Party shall in addition comply with any other data breach notification requirements required under federal or state law.

8. **Abuse and Neglect of Children and Vulnerable Adults**:

    ***Abuse Registry***: Party agrees not to employ any individual, to use any volunteer or other service provider, or to otherwise provide reimbursement to any individual who in the performance of services connected with this agreement provides care, custody, treatment, transportation, or supervision to children or to vulnerable adults if there has been a substantiation of abuse or neglect or exploitation involving that individual. Party is responsible for confirming as to each individual having such contact with children or vulnerable adults the non-existence of a substantiated allegation of abuse, neglect or exploitation by verifying that fact though (a) as to vulnerable adults, the Adult Abuse Registry maintained by the Department of Disabilities, Aging and Independent Living and (b) as to children, the Central Child Protection Registry (unless the Party holds a valid child care license or registration from the Division of Child Development, Department for Children and Families). See 33 V.S.A. §4919(a)(3) and 33 V.S.A. §6911(c)(3).

    ***Reporting of Abuse, Neglect, or Exploitation***: Consistent with provisions of 33 V.S.A. §4913(a) and §6903, Party and any of its agents or employees who, in the performance of services connected with this agreement, (a) is a caregiver or has any other contact with clients and (b) has reasonable cause to believe that a child or vulnerable adult has been abused or neglected as defined in Chapter 49 or abused, neglected, or exploited as defined in Chapter 69 of Title 33 V.S.A. shall: as to children, make a report containing the information required by 33 V.S.A. §4914 to the Commissioner of the Department for Children and Families within 24 hours; or, as to a vulnerable adult, make a report containing the information required by 33 V.S.A. §6904 to the Division of Licensing and Protection at the Department of Disabilities, Aging, and Independent Living within 48 hours. Party will ensure that its agents or employees receive training on the reporting of abuse or neglect to children and abuse, neglect or exploitation of vulnerable adults.

9. **Information Technology Systems**:

    ***Computing and Communication***: Party shall select, in consultation with the Agency of Human Services' Information Technology unit, one of the approved methods for secure access to the State's systems and data, if required. Approved methods are based on the type of work performed by the Party as part of this agreement. Options include, but are not limited to:

    1. Party's provision of certified computing equipment, peripherals and mobile devices, on a separate Party's network with separate internet access. The Agency of Human Services' accounts may or may not be provided.

    2. State supplied and managed equipment and accounts to access state applications and data, including State issued active directory accounts and application specific accounts, which follow the National Institutes of Standards and Technology (NIST) security and the Health Insurance Portability & Accountability Act (HIPAA) standards.

    ***Intellectual Property/Work Product Ownership***: All data, technical information, materials first gathered, originated, developed, prepared, or obtained as a condition of this agreement and used in the

performance of this agreement -- including, but not limited to all reports, surveys, plans, charts, literature, brochures, mailings, recordings (video or audio), pictures, drawings, analyses, graphic representations, software computer programs and accompanying documentation and printouts, notes and memoranda, written procedures and documents, which are prepared for or obtained specifically for this agreement, or are a result of the services required under this grant -- shall be considered "work for hire" and remain the property of the State of Vermont, regardless of the state of completion unless otherwise specified in this agreement. Such items shall be delivered to the State of Vermont upon 30-days notice by the State. With respect to software computer programs and / or source codes first developed for the State, all the work shall be considered "work for hire," i.e., the State, not the Party (or subcontractor or sub-grantee), shall have full and complete ownership of all software computer programs, documentation and/or source codes developed.

Party shall not sell or copyright a work product or item produced under this agreement without explicit permission from the State of Vermont.

If Party is operating a system or application on behalf of the State of Vermont, Party shall not make information entered into the system or application available for uses by any other party than the State of Vermont, without prior authorization by the State. Nothing herein shall entitle the State to pre-existing Party's materials.

Party acknowledges and agrees that should this agreement be in support of the State's implementation of the Patient Protection and Affordable Care Act of 2010, Party is subject to the certain property rights provisions of the Code of Federal Regulations and a Grant from the Department of Health and Human Services, Centers for Medicare & Medicaid Services. Such agreement will be subject to, and incorporates here by reference, 45 CFR 74.36, 45 CFR 92.34 and 45 CFR 95.617 governing rights to intangible property.

***Security and Data Transfers***: Party shall comply with all applicable State and Agency of Human Services' policies and standards, especially those related to privacy and security. The State will advise the Party of any new policies, procedures, or protocols developed during the term of this agreement as they are issued and will work with the Party to implement any required.

Party will ensure the physical and data security associated with computer equipment, including desktops, notebooks, and other portable devices, used in connection with this Agreement. Party will also assure that any media or mechanism used to store or transfer data to or from the State includes industry standard security mechanisms such as continually up-to-date malware protection and encryption. Party will make every reasonable effort to ensure media or data files transferred to the State are virus and spyware free. At the conclusion of this agreement and after successful delivery of the data to the State, Party shall securely delete data (including archival backups) from Party's equipment that contains individually identifiable records, in accordance with standards adopted by the Agency of Human Services.

Party, in the event of a data breach, shall comply with the terms of Section 7 above.

10. **Other Provisions**:

    ***Environmental Tobacco Smoke***: Public Law 103-227 (also known as the Pro-Children Act of 1994) and Vermont's Act 135 (2014) (An act relating to smoking in lodging establishments, hospitals, and child care facilities, and on State lands) restrict the use of tobacco products in certain settings. Party shall ensure that no person is permitted: (i) to use tobacco products or tobacco substitutes as defined in 7 V.S.A. § 1001 on the premises, both indoor and outdoor, of any licensed child care center or

afterschool program at any time; (ii) to use tobacco products or tobacco substitutes on the premises, both indoor and in any outdoor area designated for child care, health or day care services, kindergarten, pre-kindergarten, elementary, or secondary education or library services; and (iii) to use tobacco products or tobacco substitutes on the premises of a licensed or registered family child care home while children are present and in care. Party will refrain from promoting the use of tobacco products for all clients and from making tobacco products available to minors.

Failure to comply with the provisions of the federal law may result in the imposition of a civil monetary penalty of up to $1,000 for each violation and/or the imposition of an administrative compliance order on the responsible entity. The federal Pro-Children Act of 1994, however, does not apply to portions of facilities used for inpatient drug or alcohol treatment; service providers whose sole source of applicable federal funds is Medicare or Medicaid; or facilities where Women, Infants, & Children (WIC) coupons are redeemed.

***2-1-1 Database***: If Party provides health or human services within Vermont, or if Party provides such services near the Vermont border readily accessible to residents of Vermont, Party shall adhere to the "Inclusion/Exclusion" policy of Vermont's United Way/Vermont 211 (Vermont 211), and will provide to Vermont 211 relevant descriptive information regarding its agency, programs and/or contact information as well as accurate and up to date information to its database as requested. The "Inclusion/Exclusion" policy can be found at www.vermont211.org.

***Voter Registration***: When designated by the Secretary of State, Party agrees to become a voter registration agency as defined by 17 V.S.A. §2103 (41), and to comply with the requirements of state and federal law pertaining to such agencies.

***Drug Free Workplace Act***: Party will assure a drug-free workplace in accordance with 45 CFR Part 76.

***Lobbying***: No federal funds under this agreement may be used to influence or attempt to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with the awarding of any federal contract, continuation, renewal, amendments other than federal appropriated funds.

AHS ATT. F 05.16.2018