UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

BENJAMIN MORLEY,                            )
        Plaintiff,                       )
                                         )
        v.                               )
                                         )
STATE OF VERMONT;                           )
GOVERNOR'S WORKFORCE EQUITY                 )
AND DIVERSITY COUNCIL;                      )     Case No. 5:21-cv-272
VERMONT DEPT. OF HUMAN RESOURCES;           )
VERMONT DEPT. OF DISABILIITES, AGING        )
AND INDEPENDENT LIVING; VERMONT             )
DIVISION OF VOCATIONAL                      )
REHABILITATION;                             )
ALLISON LAND, in her individual and official )
capacity;                                   )
HIBBARD DOE, in his individual and official )
capacity;                                   )
ELIZABETH HARRINGTON, in her in dividual    )
and official capacity;                      )
DIANE DALMASSE, in her individual and       )
official capacity;                          )
KAREN BLAKE-ORNE, in her individual and     )
official capacity; and                      )
HEATHER BATALION, in her individual and     )
official capacity;                          )
        Defendants.                      )

## DEFENDANTS' COMBINED REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Plaintiff understandably makes no attempt to defend his fatally defective operative

Complaint. Instead, he argues that his proposed First Amended Complaint should not be

dismissed. Opp. at 1. The proposed First Amended Complaint, however, differs from the

Complaint only in its addition of conclusory and irrelevant allegations. All claims in Plaintiff's

operative Complaint against the State, its arms and instrumentalities, and the individual

Defendants in their official capacities should be dismissed because Plaintiff makes no effort to defend them.[1] His motion for leave to amend should be denied as futile.

I.    **Legal Standard**

Plaintiff's claims against the State, its arms and instrumentalities, and the individual Defendants in their official capacities should be dismissed, and his motion for leave to amend denied, because neither the operative Complaint nor his proposed First Amended Complaint are legally sufficient under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6). "Under Federal Rule of Civil Procedure 15(a), leave to amend should be given freely, as justice requires" but denied where amendment would be futile. *Montanio v. Keurig Green Mountain, Inc*., 276 F. Supp. 3d 212, 222 (D. Vt. 2017) (denying leave to amend as futile where proposed second amended complaint would not cure deficiencies of first). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Id*. (quoting *Lucente v. Int'l Bus. Machs. Corp*., 310 F.3d 243, 258 (2d Cir. 2002)).

II.   **Sovereign immunity bars all of Plaintiff's claims against the State, its arms and instrumentalities, and the individual Defendants in their official capacities.**

Sovereign immunity bars all of Plaintiff's claims, including his Free Speech, Equal Protection, and Vermont Fair Employment Practices Act claims, Opp. at 5-6, against the State, its arms and instrumentalities, and the individual Defendants in their official capacities. Plaintiff cites no authority for his contrary sovereign immunity position—because there is none. "Under the Eleventh Amendment, states are immune from claims brought by private individuals in federal courts." *Coniff v. Vermont*, No. 2:10-CV-32, 2013 WL 5429428, at *4 (D. Vt. Sept. 30, 2013), *aff'd sub nom. Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015). The Supreme Court has

---

[1] As explained in Defendants' motion, ECF No. 25 at 1, Plaintiff's claims against Defendants in their personal capacities are not addressed here. Defendants anticipate responding to the personal capacity claims later in February, consistent with the service waivers they returned.

since 1890 "rejected the idea that the Eleventh Amendment allowed states, without their consent, to be sued by their own citizens in federal court." *Mancuso v. New York State Thruway Auth*., 86 F.3d 289, 292 (2d Cir. 1996) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

Despite over a hundred years of Supreme Court precedent to the contrary, Plaintiff argues that sovereign immunity does not bar his claims against the State entities for injunctive and declaratory relief. Opp. at 2-4. But the Eleventh Amendment bars a suit against a State "'regardless of the nature of the relief sought.'" *Feng Li v. Rabner*, 643 F. App'x 57 (2d Cir. 2016) (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

### a. Plaintiff cannot sidestep sovereign immunity by invoking *Ex Parte Young*

Plaintiff's claims against the Defendants in their official capacities fail because he has not plausibly alleged that the *Ex parte Young* exception to immunity applies. Sovereign immunity generally bars claims against State officials in their official capacities because such claims are effectively against the State. *Green v. Mansour*, 474 U.S. 64, 68 (1985). In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court "created an exception to this general principle" by holding "that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Id*. Where a state official is not engaged in a "continuing violation of federal law," however, so there is "no occasion to issue an injunction," the general rule applies. *Green*, 474 U.S. at 73. The official is entitled to sovereign immunity and no form of relief—including declaratory relief—is available. *Id*.[2]

Plaintiff makes no effort to argue that his operative Complaint plausibly alleged that the individual Defendants were engaged in an ongoing violation of law. Opp. at 2-5. He instead

---

[2] Plaintiff argues that "because there is an ongoing violation of federal law, the Defendants' claim that his alleged delay in seeking relief has no merit." Opp. at 4. Defendants argued that Plaintiff's delay in bringing his motion for a preliminary injunction would require its denial even if his irreparable harm theory was not entirely speculative. ECF No. 25 at 25. This argument did not pertain to Defendants' Motion to Dismiss.

argues that his proposed First Amended Complaint does. Like the operative Complaint, however, the allegations in the First Amended Complaint regarding the official-capacity Defendants are either backward-looking, and so do not suffice to invoke *Ex parte Young*, or are the kind of "naked assertions devoid of further factual enhancement" that fail state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and alteration omitted); *see also Pappas v. Lorintz*, 832 F. App'x 8, 12 (2d Cir. 2020) (Eleventh Amendment bars claims focused on past alleged harms even though plaintiff styled them as seeking declaratory and injunctive relief).

Plaintiff's allegations against Harrington consist of past acts and speculation. He claims, for example, that she "treated Plaintiff differently than other employees." Opp. at 3. He claims that in April 2021, after he allegedly said a colleague was "brainwashed" about a training, she told him he "is expected" to attend employee training and asked him to refrain from "commentary and statements during work that do not foster a safe and inclusive work environment." Opp. at 3; FAC ¶¶ 141-42. Such past acts are not sufficient to invoke *Ex parte Young*. *De Figueroa v. New York*, 403 F. Supp. 3d 133, 151–52 (E.D.N.Y. 2019) ("Where a plaintiff alleges only discrete acts of past discrimination and retaliation, merely characterizing the request for relief as prospective will not suffice to invoke the *Ex parte Young* doctrine" (quotation omitted)); *Pasternak v. Baines*, No. 00 Civ. 0369(JTC), 2006 WL 2570982, at \*9 (W.D.N.Y. Sept. 5, 2006) (holding *Ex parte Young* not satisfied because "plaintiff has alleged no ongoing violations of federal law, only discrete acts of past discrimination and retaliation by defendant").

Plaintiff's newly added allegations that Harrington criticizes his work more than other counselors, FAC ¶¶ 155-56, and that "upon information and belief, he will continue to be targeted by his supervisors, Harrington and Blake-Orne," *id*. ¶ 177, are factually unsupported. Plaintiff alleges no facts regarding how Harrington treats other employees to support his bare

conclusion that he is treated differently. Nor does he allege facts to support his conclusion that Harrington will "target" him. Such bare labels and conclusions are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Plaintiff's allegations against Blake-Orne are also backward-looking or conclusory. He alleges she retaliated against him by reprimanding him for allegedly saying a colleague was brainwashed, revealing confidential client information, and failing to tell her that he was postponing a master's program that is required for his position. Opp. at 3-4; FAC ¶¶ 141-43, 151, 154. As with Harrington, such backward-looking allegations do not suffice to establish that *Ex parte Young* applies. *Pierre v. New York State Dep't of Corr. Servs.*, No. 05 CIV. 0275RJS, 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (past incident of alleged discrimination does not suffice to establish *Ex parte Young* applies). Likewise, his bare-bones conclusion that she will "target" him, FAC ¶ 177, without any factual support, is insufficient. *Iqbal*, 556 U.S. at 678; *Aho v. Anthony*, No. 3:09-CV-728 (CFD), 2009 WL 10711875, at *2 (D. Conn. Dec. 4, 2009) (speculation is insufficient to establish ongoing violation of federal law for *Ex parte Young*).

Next, while Plaintiff summarily argues that Harrington and Blake-Orne illegally retaliated against him, Opp. at 3-4, he makes no such argument regarding Land, Dalmasse, and Batalion. Plaintiff makes no argument at all as to how they are violating his rights. Instead, Plaintiff just describes one past conversation he had with Land in which she allegedly said he would have to "get used to" diversity training and "ignored [his] complaints"; and he vaguely alleges that Land, Dalmasse, and Batalion are "involved in the ongoing DEI indoctrination." Opp. at 4. Plaintiff's claims against Land, Dalmasse, and Batalion fail because he does not explain how they are violating his federal rights, let alone "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for . . . misconduct." *Iqbal*, 556 U.S. at 678.

III.     **Plaintiff lacks standing to bring a Free Exercise claim.**

Plaintiff tries to read religion out of the Free Exercise Clause. He claims violation of his
"conscience" suffices to establish standing under it. Opp. at 7. But a claim for free exercise of
religion must involve religion. *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972) (holding "to
have the protection of the Religion Clauses, the claims must be rooted in religious belief"). That
beliefs are "sincerely held" does not make them sincerely held religious beliefs. *United States v.
Meyers*, 95 F.3d 1475, 1482 (10th Cir. 1996). Neither "philosophical and personal" beliefs nor a
"subjective evaluation and rejection of . . . contemporary secular values" can "rise to the
demands of the Religion Clauses." *Yoder*, 406 U.S. at 216; *see also Africa v. Pennsylvania*, 662
F.2d 1025, 1033 (3d Cir. 1981) (distinguishing between "secular philosophy" and religion);
*United States v. Kauten*, 133 F.2d 703, 708 (2d Cir. 1943) (distinguishing between "personal
predilection or political and social philosophy" and religion).

It is, therefore, difficult to argue that political and ideological beliefs such as "nihilism,
anarchism, pacifism, utopianism, socialism, libertarianism, Marxism, . . . and humanism" are
religions. *United States v. Meyers*, 906 F. Supp. 1494, 1504 (D. Wyo. 1995), *aff'd*, 95 F.3d 1475
(10th Cir. 1996). Veganism, for example, although a "moral and ethical creed," a "philosophy,"
and a "way of life," is not a religion. *Friedman v. S. Cal. Permanente Med. Grp.*, 102 Cal. App.
4th 39, 70 (2002); *see also McDavid v. Cnty. of Sacramento*, No. 2:06-CV-0638-MCE-GGH,
2006 WL 8458936, at *5 (E.D. Cal. June 27, 2006) (claim that veganism is the "right and
appropriate way to live" does not make it religion; even though court could not say plaintiff
"lacks the requisite sincerity with respect to his professed veganism," his "dietary regimen is a
purely secular lifestyle choice, not protected by the Free Exercise Clause").

Plaintiff's libertarian-leaning philosophical and political beliefs about race and opportunity in America are not a religion. *See* FAC ¶ 211; *Meyers*, 906 F. Supp. 1504 (libertarianism not a religion). Plaintiff does not even claim they are. His Free Exercise Clause argument is pointedly premised on "sincerely held beliefs," not "sincerely held religious beliefs." *See* FAC ¶¶ 210-13. He does not claim to be religious. *See generally* FAC. His "philosophical and personal" beliefs do not "rise to the demands of the Religion Clauses." *Yoder*, 406 U.S at 216.

Plaintiff argues that he can bring a claim under the Free Exercise Clause based on his "fundamental principles of conscience." Opp. at 7. He bases his argument that an "expression of conscience" qualifies for protection under the Free Exercise Clause on an expansive reading of *United States v. Seeger*, 380 U.S. 163 (1965), a statutory interpretation case. This fails for two reasons. First, *Seeger* is inapposite to First Amendment claims, as it "deal[t] with a narrow question of statutory construction, not constitutional interpretation." *McDavid*, 2006 WL 8458936, at *3. Moreover, "[e]ven if *Seeger* . . . were on point," the Supreme Court subsequently "narrowed the definition of 'religion' for Free Exercise purposes in *Wisconsin v. Yoder*, 406 U.S. 205 (1972)." *Id.*; *see also Meyers*, 906 F. Supp. at 1500 (holding "[i]f there was any hope that" *Seeger*'s test for what constitutes religion "might be carried over to the Religion Clauses, the Court dashed the hope in *Yoder*").[3]

## IV.    Plaintiff has not stated an Establishment Clause claim.

Plaintiff also tries to read religion out of the Establishment Clause. Plaintiff's Opposition makes no effort to explain how the diversity training he challenges is a religion. *See* Opp. at 8-

---

[3] *Torcaso v. Watkins* is likewise of no help to Plaintiff because it simply held government cannot "aid those religions based on a belief in the existence of God as against those religions founded on different beliefs" such as Buddhism. 367 U.S. 488, 495 (1961). It also referenced Secular Humanism, which had been "found to be religious for tax exemption purposes primarily because of their organizational similarity to traditional American church groups." *Kalka v. Hawk*, 215 F.3d 90, 99 (D.C. Cir. 2000). *Torcaso* did not hold that secular beliefs are religious. *See id.*

11. He relies on *DeStefano v. Emergency Housing Group, Inc*., 247 F.3d 397, 406 (2d Cir. 2001), a case in which it was clear that the Alcoholics Anonymous meetings at issue were religious but not what the meetings' relationship to the government was. *Id*. at 407 ("It is too late in the day" to argue AA is not religious). *DeStefano* is of no help to Plaintiff. It just underscores how different Plaintiff's claim is from a meritorious Establishment Clause claim. The meetings in *DeStefano* required participants to pledge to "turn their will and their lives over to the care of God as they understood him." *Id*. (quotation and alterations omitted). *DeStefano* cited a long line of authority holding AA is religious, including *Warner v. Orange County Department of Probation*, 115 F.3d 1068 (2d Cir. 1997). *Warner* held that a government agency violated the Establishment Clause by conditioning probation on participation in AA because the meetings "had a substantial religious component" and "placed a heavy emphasis on spirituality and prayer"; participants were told to pray to God for help and the meetings opened and closed with group prayer. *Id*. at 1075. Meetings "were intensely religious events." *Id*. (quotation omitted).

Plaintiff, to the contrary, does not allege that the diversity trainings he attended discussed God or a higher power, involved prayer, or placed a heavy emphasis on spirituality. He does not, in short, plausibly allege that the trainings were religious. Diversity training is not a religion. *Cf. United States v. Allen*, 760 F.2d 447, 450 (2d Cir. 1985) (refusing "to recognize as a 'religion' what the religion's alleged adherents have not identified as such"). Plaintiff is simply trying to challenge a secular government practice he disagreed with by calling it religious.

## V.      Plaintiff has not stated a privacy claim.

Plaintiff suggests that he has a constitutional right to information privacy that was violated when a trainer asked DVR employees how they were feeling and to take two minutes to talk about themselves.  Opp. at 11-12.  But he does not dispute that a partial transcript he attached to

the complaint shows that the trainer repeatedly framed her questions in voluntary terms or that the Court can consider the transcript. *Compare* Mot. at 15-16 *with* Opp. at 12-14. And Plaintiff does not allege that any Defendant asked him anything during the training. Plaintiff also does not cite any cases suggesting that asking someone how they are feeling and receiving responses like "waking up still" and "highly caffeinated and ready to learn" is improper, much less that doing so is egregious official conduct that shocks the conscience. Opp. at 12-14; Ex A. (excerpts from a complete training transcript including responses omitted from ECF No. 1-3).

Plaintiff's privacy claim fails because contracting with an experienced trainer to conduct diversity, equity, and inclusion training is a good thing that employers should do, not "'egregious official conduct'" that "'shock[s] the conscience.'" *Hancock v. Cty of Rensselaer*, 882 F.3d 58, 66 (2d Cir. 2018) (quoting *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005)). Indeed, Plaintiff offers no response to the many reasons a public-facing agency like DVR should foster an inclusive work environment. *Compare* Mot. at 14 *with* Opp. at 13-14. Instead, Plaintiff attempts to sidestep his failure to allege egregious official conduct by asserting that strict scrutiny applies based on Justice Blackmun's concurrence from *Planned Parenthood v. Casey*, 505 U.S. 833, 829 (1992). Opp. at 13. It does not. *Hancock* and *O'Connor* are binding cases addressing information privacy claims in the context of executive action. *Hancock,* 882 F.3d at 66; *O'Connor*, 426 F.3d at 203. Plaintiff cannot contradict them by citing a nonbinding concurring opinion addressing the different subject of abortion-related legislative action.

Finally, Plaintiff suggests that diversity, equity, and inclusion training is not related to his employment. But as a "vocational rehabilitation counselor," FAC ¶ 2, Plaintiff's job is helping individuals with disabilities, including students, overcome obstacles to employment. And the Opposition does not contest that people of color with disabilities are disciplined more often and

harshly than Caucasians as students, have higher unemployment rates as adults, and are disproportionately incarcerated.  *See* Mot. at 30-32; Opp. at 11-14.  Additional examples of disparities include: (1) Vermonters being treated differently by housing providers based on race, (2) national research showing substantially unequal upward income and educational mobility rates by race, and (3) research involving resumes identical except as to potential race indicators finding that whitened resumes are more than twice as likely to generate interview requests.[4]  In short, even if Plaintiff offered *any* support for his assertion that racism is not a problem in Vermont – and he does not – there would be no serious question that diversity, equity, and inclusion training is directly relevant to his employment.

DATED at Montpelier, Vermont, this 4th day of February 2022.

STATE OF VERMONT

THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL


By:      */s/ David Boyd*
        David Boyd
        Assistant Attorney General
        Rachel Smith
        Deputy Solicitor General
        Office of the Attorney General
        109 State Street
        Montpelier, VT 05609-1001
        (802) 828-1101
        david.boyd@vermont.gov
        rachel.e.smith@vermont.gov

        Counsel for Defendants

---

[4] *See* Vermont Legal Aid, Rental Discrimination Report 3 (2014), https://www.vtlegalaid.org/sites/default/files/Rental%20Discrimination%20Report%202014_0.pdf; Shayanne Gal, *et al.*, 26 simple charts, Business Insider; https://www.businessinsider.com/us-systemic-racism-in-charts-graphs-data-2020-6; Dina Gerdeman, Minorities Who Whiten Job Resumes Get More Interviews, Harvard Business School; https://hbswk.hbs.edu/item/minorities-who-whiten-job-resumes-get-more-interviews.